UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

―――――

CHARLES EDWARD MYLES,

                    Plaintiff,                         Case No. 1:14-cv-1243

v.                                             Honorable Robert J. Jonker

MICHIGAN DEPARTMENT OF
CORRECTIONS,

                    Defendant.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed because Defendant is immune from suit and Plaintiff fails to state a claim.

**Factual Allegations**

Plaintiff Charles Edward Myles is incarcerated by the Michigan Department of Corrections (MDOC) at the Central Michigan Correctional Facility.  Defendant is identified as a "department" called "Michigan Dep't. of Correction & Superiors." (Compl., docket #1, Page ID##2, 3.)  Plaintiff alleges that Defendant has been interpreting its policies and state law regarding parole eligibility incorrectly, specifically MDOC Policy Directive 06.05.104 and Mich. Comp. Laws §§ 791.234(3), 791.244(1).  Plaintiff's MDOC profile indicates that he was sentenced in April 1993 to serve 25 to 50 years of imprisonment for two counts of assault with intent to commit murder.  *See* http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=179541 (visited Dec. 12, 2014). In 1985, he was convicted of manslaughter; he served his sentence for that conviction and was discharged in 1990.  *Id.*  Plaintiff claims that he is eligible for parole consideration in 2015, but Defendant has calculated that he is eligible for parole no sooner than September 7, 2017.

Attached to the complaint is a letter from Plaintiff to the Chair of the Michigan Parole Board, Thomas P. Combs, in which Plaintiff complains that the parole board is interpreting Mich. Comp. Laws § 791.234 incorrectly, "putting him in a new category that shut[]s the door on any possibility of parole."  (Letter to Thomas Combs, docket #1-1, Page ID#7.) In response, the Michigan Parole Board sent Plaintiff a letter informing him that he was sentenced as a "habitual long indeterminate," meaning that his minimum sentence is ten years or longer.  (Letter from Michigan Parole Bd., docket #1-1, Page ID#8.)  Also, because he was sentenced as a habitual offender, the sentencing court imposed a "'calendar minimum' date of September 7, 2017."  (*Id.*)  The calendar minimum date overrides any disciplinary credits accrued while in prison that might have made him eligible for an earlier release date.  (*Id.*)  Per MDOC Policy Directive 03.01.201, a prisoner is not

- 2 -

eligible for  parole at any time prior to the calendar minimum date without the approval of the sentencing judge.  (*Id.*)

Plaintiff subsequently filed a prisoner grievance complaining that the parole board was incorrectly interpreting MDOC policy and state law regarding parole eligibility and parole interviews. (4/22/2014 Grievance, docket #1-1, Page ID#9.)  His grievance was denied on the basis that the September 7, 2017 parole eligibility date was calculated correctly.  (Step I Grievance Response, docket #1-1, Page ID#10.)  Plaintiff appealed that decision, and in response he received a detailed summary of his sentences and the basis for calculating the earliest possible release date of September 7, 2017.  (Step II Grievance Response, docket #1-1, Page ID#18.)  He appealed that response to Step III and to the Office of Legal Affairs, but his appeal was denied because he does not have a right to parole; release on parole is discretionary with the parole board.  (Letter from Office of Legal Affairs, docket #1-1, Page ID#29.)

Plaintiff contends that Defendant violated Plaintiff's rights under the Fourteenth and Eight Amendments to the Constitution, including his rights to due process and to equal protection. As relief, Plaintiff seeks a declaratory judgment that Defendant has violated his rights and conspired to harass Plaintiff "by interpreting [Policy Directive] 06.05.104, [Mich. Comp. Laws §] 791.234.(3) and violat[ing] the way [the] parole board conduct[s] interviews."  (Compl., Page ID#5.)  He also seeks an order requiring that certain unidentified inaccurate information be expunged from his prison file.  Finally, he seeks compensatory damages.

- 3 -

**Discussion**

I. Immunity

Plaintiff may not maintain a § 1983 action against the Michigan Department of

Corrections. Regardless of the form of relief requested, the states and their departments are immune

under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity

or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State*

*Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782

(1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly

abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979),

and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*,

803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has

specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment.

*See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-

1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting

through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See*

*Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S.

58 (1989)). Therefore, Plaintiff's action against Defendant MDOC must be dismissed.

II. Failure to state a claim

Even if immunity did not bar Plaintiff's action, it would be subject to dismissal

because it does not state a claim. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege

the violation of a right secured by the federal Constitution or laws and must show that the

deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42,

- 4 -

48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. State Law

Plaintiff asserts that Defendant has not complied with prison policies or state law concerning parole eligibility. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendant is violating state law therefore fails to state a claim under § 1983. Similarly, Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007).

### B. Due Process

Plaintiff contends that Defendant has denied him due process. To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).

Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  Rather, a liberty interest is present only if state law entitles an inmate to release on parole.  *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole.  The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011).  In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole.  *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003).  In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge.  *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010).  Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system.  *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Plaintiff has served his maximum sentence, he has no reasonable expectation of liberty.  The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained."  *Greenholtz*, 442 U.S. at 11.  The Michigan Parole Board's failure or refusal to consider Plaintiff for parole, therefore, implicates no federal right.  In the absence of a

protected liberty interest, Plaintiff fails to state a claim for a violation of his procedural due process rights.

### C. Eighth Amendment

Plaintiff also asserts that Defendant has violated his rights under the Eighth Amendment.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes; however, the United States Constitution does not require strict proportionality between a crime and its punishment.  *Harmelin v. Michigan,* 501 U.S. 957, 965 (1991); *United States v. Marks,* 209 F.3d 577, 583 (6th Cir. 2000).  "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment."  *Marks,* 209 F.3d at 583.  A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'"  *Austin v. Jackson,* 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek,* 65 F.3d 60, 62 (6th Cir. 1995)).  Furthermore, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas,* 49 F.3d 253, 261 (6th Cir. 1995).  Plaintiff was not sentenced to death or life in prison without the possibility of parole, and he does not claim that his sentence falls outside the maximum penalty under state law.  The mere fact that he is required to serve a portion of his sentence before he is eligible for parole does not mean that his rights under the Eighth Amendment have been violated.  *Cf. Carnes v. Engler*, 76 F. App'x 79, 81 (6th Cir. 2003) ("The Eighth Amendment prohibits conduct that involves the unnecessary and wanton infliction of pain. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir.1987). The denial of parole clearly does not fall under this umbrella.").

- 7 -

### D.  Equal Protection

Plaintiff also contends that he has been denied equal protection of the law.  The Equal Protection Clause of the Fourteenth Amendment "protects against arbitrary classifications, and requires that similarly situated persons be treated equally."  *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 574 (6th Cir. 2002).  A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals.  *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).  Parole is not a fundamental right and Plaintiff does not allege that he is a member of a suspect class.  Prisoners are not a suspect class for equal protection purposes.  *See Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005); *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998).  Because neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies.  *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006).  "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'"  *Id.* (quoting *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005)).  To prove an equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff does not clearly allege any facts indicating that he has been treated differently from similarly-situated individuals.  The Court cannot discern the basis for Plaintiff's claim that he is eligible for parole in 2015, or that the MDOC is interpreting its policies and state law incorrectly.

Indeed, the attachments to the complaint suggest that the parole board is merely complying with the terms of his sentence, which requires that he be eligible for parole no earlier than September 7, 2017. Similarly, the policy directive cited by Plaintiff indicates that habitual offenders are not eligible for parole prior to the calendar minimum date in their sentence without the approval of the sentencing court. *See* MDOC Policy Directive 06.05.104 ¶ E (effective June 1, 2012). The parole board does not have authority to override a sentence issued by the state court, and Plaintiff does not contend that other prisoners are being treated differently in that respect.

To the extent that Plaintiff claims he is being treated differently from other prisoners because, as a habitual offender, he cannot accrue disciplinary credits to reduce his minimum sentence, his claim would not survive rational-basis review. The state has a patently rational basis for treating habitual offenders (i.e., prisoners with a history of multiple criminal offenses) differently than prisoners without that history. The state could reasonably conclude that prisoners with a demonstrated propensity for criminal conduct are more likely to re-offend in the future than other prisoners and, thus, no matter how many disciplinary credits they earn as a result of their good behavior in prison, habitual offenders should serve at least the minimum term of their sentence before they are released on parole. For all the foregoing reasons, therefore, Plaintiff does not state a claim.

## <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed  pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), because Defendant is immune from suit and Plaintiff fails to state a claim.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:     January 7, 2015               /s/ Robert J. Jonker
                                    ROBERT J. JONKER
                                    UNITED STATES DISTRICT JUDGE

- 10 -